UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GARY EMERSON WEST, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-2443 (RBW) |
| ELLEN SEGAL HUVELLE *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Gary Emerson West, brought this action *pro se* against United States District Judge Ellen Segal Huvelle for actions she took while presiding over his criminal proceedings in this judicial district. *See* Complaint ("Compl.") at 1–2, ECF No. 1; *United States of America v. West*, No. 1:01-cr-00168-ESH-1 (D.D.C.) ("*West I*" or "Crim. No. 01-168"). The plaintiff has also sued two Assistant United States Attorneys ("AUSA"), Ronald L. Walutes, Jr., and Laura Ingersoll, who represented the government during his prosecution, and one of his former criminal defense attorneys, Gene Johnson. *See* Compl. at 1 (listing parties).

Pending before the Court is the Motion to Dismiss by Federal Defendants Huvelle, Walutes and Ingersoll ("Defs.' Mot."), ECF No. 10. On June 3, 2019, when the plaintiff's opposition to the foregoing motion was required to be filed, the plaintiff submitted a document captioned: "Memorandum of Points and Authorities in Support of Motion to Proceed with the Jury Trial as Schedules," ECF No. 13, which the Court construes as the plaintiff's opposition ("Pl.'s Opp'n") to the motion to dismiss.

1

Upon careful consideration of the parties' submissions, and for the reasons that follow, the Court will (1) grant the federal defendants' motion to dismiss, (2) decline supplemental jurisdiction over any local law claim against Attorney Johnson, and (3) dismiss this case.

## I. BACKGROUND

### A. The Criminal Proceedings

In *West I*, the plaintiff pleaded guilty on January 9, 2002, to four counts of Armed Bank Robbery, 21 U.S.C. § 2113(a)(d) (2000); one count of Use of a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c) (2000); and one count of False Statements, 18 U.S.C. § 1001 (a)(2), and his sentencing was scheduled for April 8, 2002. *See* Crim. Case No. 01-168, ECF No. 160 (Judgment in a Criminal Case filed July 15, 2002 ("Judgment")). Shortly thereafter, the plaintiff sought to withdraw his guilty plea in a document that Judge Huvelle allowed to be filed on January 17, 2002, as a motion to withdraw his plea of guilty. *See id.*, ECF Nos. 112, 116; Compl. ¶ 1. According to the federal defendants, the plaintiff "asserted," as grounds to withdraw his guilty plea, among other things, that "he had been deceived by . . . Johnson, who 'sold' him on the idea of pleading [guilty] and then working out a deal with the prosecutor that would reduce his sentence to the two-to-five-year range." Memorandum of Points and Authorities in Support of Motion to Dismiss by Defendants Huvelle, Walutes and Ingersoll ("Defs.' Mem.") at 2, ECF No. 10-1. On January 23, 2002, Johnson filed a motion to withdraw as counsel for the plaintiff, Crim. Case No. 01-168, ECF No. 113, which was granted on January 24, 2002, ECF No. 114. In granting Johnson's motion, Judge Huvelle "assumed that Mr. West [would] retain [another] counsel to represent him in this matter since he previously had private representation." *Id*.

The government filed its opposition to the plaintiff's motion to withdraw the guilty plea on February 22, 2002, ECF No. 117, and on March 8, 2002, private attorney Joanne Maria Vasco entered her appearance to represent the plaintiff. *Id*., ECF No. 118; *see* case caption (designating Vasco as "Retained"). However, on March 20, 2002, Judge Huvelle granted Vasco's motion to withdraw as the plaintiff's counsel. *Id*., ECF No. 125. Meanwhile, on March 5, 2002, Judge Huvelle scheduled a hearing on the plaintiff's motion to withdraw his guilty plea for June 3, 2002. On May 3, 2002, Jensen Egerton Barber was then appointed to represent the plaintiff. *Id*., ECF No. 129; *see* case caption (designating Barber as a "CJA Appointment").

The criminal case docket indicates that Judge Huvelle conducted a hearing on the plaintiff's motion to withdraw his guilty plea on June 3, 2002, and June 4, 2002, denied the motion "for reasons stated on the record," referred the plaintiff to the probation office for the preparation of a presentence investigation report, and scheduled sentencing for June 27, 2002. On June 27, 2002, the sentencing hearing was converted to a status hearing, during which Judge Huvelle granted Attorney Barber's oral motion to withdraw as the plaintiff's counsel, permitted retained counsel Larry Brown to represent the plaintiff *pro hac vice*, and rescheduled the sentencing for July 9, 2002. *See* case caption (designating Brown as "Retained").

On July 9, 2002, Judge Huvelle denied the plaintiff's oral motion to continue the sentencing hearing and to withdraw his guilty plea. She then sentenced the plaintiff to an aggregate prison sentence of 250 months (or nearly 21 years) followed by a term of supervised release totaling eight years. *See* Crim. Case No. 01-168 (July 9, 2002 Docket Entry). In addition, the plaintiff was ordered to pay restitution totaling $405,224.00. *Id*.; *see also* Judgment at 5.

**B.     The Post-Conviction Proceedings**

On July 19, 2002, the plaintiff noticed his appeal of the order denying his motion to withdraw his guilty plea. Crim. Case No. 01-168, ECF No. 156. In 2003, the District of Columbia Circuit ("D.C. Circuit") issued the following ruling:

> It is ORDERED AND ADJUDGED that the judgment of conviction entered on January 9, 2002 be affirmed. Because the plea colloquy met the standards of Fed. R. Civ. P. 11, and because appellant has failed to advance a colorable claim of innocence, the district court did not abuse its discretion in denying appellant's motion to withdraw his plea.

*United States v. West*, No. 02-3070, 2003 WL 467239, at *1 (D.C. Cir. Feb. 14, 2003) (per curiam) (citation omitted). In July 2003, the plaintiff filed a motion pursuant to 28 U.S.C. § 2255 (2000) to vacate, set aside or correct his sentence, which Judge Huvelle denied on April 30, 2004. *See* Crim. Case No. 01-168, ECF Nos. 228, 284; *see also id.*, ECF No. 293 (Order denying certificate of appealability). In 2011, the D.C. Circuit denied the plaintiff "authorization to file a second or successive § 2255 motion . . . to vacate the coerced plea agreement and resulting judgment under authority of 28 U.S.C. § 2255" because he had "not shown that the motion contains either newly discovered evidence or a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, so as to meet the standards set out in 28 U.S.C. § 2255(h)." *In re: Gary Emerson West*, No. 11-3036 (D.C. Cir. July 18, 2011), Crim. Case No. 01-168, ECF No. 361.

In July 2016, however, the D.C. Circuit granted the plaintiff's "petition for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255" to challenge his sentence in light of *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), but it "express[ed] no opinion as to the merits of petitioner's claim." *In re: Gary Emerson West*, No. 16-3057 (D.C. Cir. July 1, 2016) (citing 28 U.S.C. 2244(b)), Crim. Case No. 01-168, ECF No. 391. On September 11,

2019, Research & Writing Attorney Benjamin Flick of the Federal Public Defender's Office entered his appearance on the plaintiff's behalf in his criminal case, *id*., ECF No. 397, and the plaintiff's section § 2255 motion is pending resolution by the court.

### C. The Plaintiff's Allegations

In the plaintiff's Complaint, he alleges the following relevant events. Judge Huvelle "denied" his "motion to withdraw his plea and moved to sentence" him. Compl. ¶ 3. "On the day of sentencing[,] the government (Ronald L. Walutes, Jr.) lied and stated that the government's witness (Dennis L. Roie) was dead[,] and he showed a death certificate stating that Mr. Roie had died from multiple gun shots to the head." *Id*. (parentheses in original). Judge Huvelle then "quashed the arrest warrant on Dennis L. Roie because the government proved he was dead." *Id*. ¶ 4. Judge Huvelle "changed her mind" with regard to the plaintiff's "wire plea which would have given [him] two years" and instead "gave West 27 years of imprisonment for the body of Dennis L. Roie." *Id*. ¶ 5. Four years later, Roie "was found alive" and Judge Huvelle sentenced Roie "to 80 months of imprisonment because of his involvement in the crime." *Id*. ¶ 6. She did not, however, "bring West back to correct his sentence even though he only received as much time as he did because the government lied and presented a fake death certificate for Dennis L. Roie." *Id*. ¶ 7.

As to the remaining defendants, the plaintiff alleges that AUSA Walutes "misled" Judge Huvelle "and showed her a fake death certificate so that West could receive more time," Compl. ¶ 8, and that AUSA Ingersoll "took over the [criminal] case and was fully aware that . . . Roie was alive" but failed "to bring that information" to Judge Huvelle's attention, *id*. ¶ 9. The plaintiff alleges that Attorney Johnson "misled" him "by showing [him] a fake death certificate with . . . Roie's name on it and he also lied to [West] and told [him] that [he] would only get 2

years' imprisonment by taking the plea offered to [West]. He lied about meeting [West's] Probation Officer Brian McGill and stated that [West's] probation officer did not know [his] whereabouts." Compl. ¶¶ 8–10.

The plaintiff has not provided a separate statement regarding each claim he asserts in his Complaint. His prayer for relief requests "termination of [his] sentence and a jury trial to sue for [his] losses." Compl. at 2.

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Such a motion "presents a threshold challenge to the court's jurisdiction . . . ." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see Grand Lodge Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (noting that "a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). Accordingly, the Court must dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1).

Under Rule 12(b)(1), "it is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and the plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence, *see, e.g., Moore v. Bush*, 535 F. Supp. 2d 46, 47 (D.D.C. 2008). In deciding a motion to dismiss based upon lack of subject matter jurisdiction, a Court is not limited to the allegations set forth in the complaint, but "may consider materials outside the pleadings . . . ." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Because the Court must ensure its jurisdictional authority, "'the [p]laintiff's factual allegations in the complaint . . . will

bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F. Supp. 2d at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987) (alteration in original))).

**B.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether the complaint properly "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not required, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), a plaintiff must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation," *id*. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). However, a complaint alleging "facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, conclusory allegations are not

entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**C.**     ***Pro Se* Filings**

In applying the framework above, the Court must be mindful of the fact that the plaintiff is proceeding in this matter *pro se*. This appreciation is required because the pleadings of *pro se* parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a *pro se* litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, a "*pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### III.  ANALYSIS

**A.**     **Subject Matter Jurisdiction**

This Court lacks jurisdiction "to terminate" the plaintiff's sentence in this civil case. Compl. at 2. Such relief is exclusively available through a motion to vacate under 28 U.S.C. § 2255, which states:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (2018). Additionally,

> [a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). The plaintiff has not shown that the remedy available to him is inadequate or ineffective, nor could he plausibly make that claim. As discussed above, the plaintiff has pursued § 2255 relief in the sentencing court on multiple occasions, and he is currently being represented in that court on a duly authorized successive motion. Furthermore, "it is well-settled that a prisoner seeking relief from his conviction or sentence may not bring [a separate] action" for injunctive relief. *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (per curiam). And, although the plaintiff does not specifically state that he is seeking injunctive relief, that is essentially what he is asking the Court to do, by requesting the "termination of [his] sentence." Compl. at 2. Accordingly, the plaintiff's claim for injunctive relief to terminate his sentence is hereby dismissed for want of jurisdiction.

**B.      Failure to State a Claim**

What remains is the plaintiff's request "to sue for [his] losses," Compl. at 2, which the Court construes as a claim for monetary damages brought under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

**1. Judicial Immunity**

The plaintiff does not state the capacity in which he is suing Judge Huvelle. However, because the plaintiff is challenging actions taken by Judge Huvelle in her capacity as a judicial officer, the defendants argue that she is entitled to absolute immunity. *See* Defs.' Mem. at 9–11. The Court agrees.

The United States Supreme Court states that "[a]s a class, judges have long enjoyed a comparatively sweeping form of immunity" to protect, among other things, "the finality of judgments" and "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988). To that end, judges enjoy absolute immunity from suits based on acts taken in their judicial capacity, so long as they have jurisdiction over the subject matter. *Moore v. Burger*, 655 F.2d 1265, 1266 (D.C. Cir. 1981) (per curiam) (citing cases). Such immunity applies "even if [the judge's] exercise of authority is flawed" or erroneous. *Stump v. Sparkman*, 435 U.S. 349, 356, 359 (1978). For a dissatisfied litigant, "[s]eeking relief through an appeal to an appellate court is the sole remedy available . . . to challenge the legality of decisions made by a judge in her judicial capacity." *Caldwell v. Obama*, 6 F. Supp. 3d 31, 44 (D.D.C. 2013). Therefore, complaints against judges who have "done nothing more than their duty" have been deemed, at best, "meritless," *Fleming v. United States*, 847 F. Supp. 170, 172 (D.D.C. 1994), *cert. denied* 513 U.S. 1150 (1995), and at worst "patently frivolous," *Caldwell v. Kagan*, 777 F. Supp. 2d 177, 179 (D.D.C. 2011); *see Chambers v. Gesell*, 120 F.R.D. 1, 3 (D.D.C. 1988) (finding immunity of the judicial defendant "a major defect . . . which convinces us that plaintiff's claim is fundamentally and fatally flawed").

The allegations asserted against Judge Huvelle in the Complaint are based solely on the rulings Judge Huvelle rendered during the plaintiff's criminal prosecution for committing federal offenses. It is without question that Judge Huvelle had jurisdiction over the offenses that the plaintiff was convicted of committing in his criminal case, and the challenged decisions she made in that case were clearly judicial acts. *See United States v. Robinson*, 587 F.3d 1122, 1127 (D.C. Cir. 2009) (the district court's statements concerning a plea agreement "spoke to a

quintessential judicial function"), quoting *United States v. Kraus*, 137 F.3d 447, 454 (7th Cir. 1998) ("district judge's assessment of plea agreement in light of facts and Guidelines constituted 'exactly the kind of active evaluation of the plea agreement that Rule 11 and the cases interpreting it envision'") (internal quotation marks and other citation omitted)); *see also Miller v. Marriott Int'l LLC*, 378 F. Supp. 3d 1, 7 (D.D.C. 2019) (stating that judge's "issuance of an order . . . is a quintessential judicial act for which [the judge] enjoys absolute immunity"); *Caldwell*, 6 F. Supp. 3d at 44 ("The acts of assigning a case, ruling on pretrial matters, and rendering a decision all fall within a judge's judicial capacity.") (citation and internal quotation marks omitted)); *Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 25 (D.D.C. 2003) (Walton, J.) ("The district judge was clearly acting within his judicial capacity when, in connection with addressing issues related to the claims raised in the plaintiff's complaint, the judge, for example, ruled that certain evidence would be excluded . . ., dismissed a claim for lack of jurisdiction, and disallowed a private claim because it had been filed under the [False Claims Act]") (following *Forrester v. White*, 484 US. 219 (1988)). Therefore, the Complaint, as related to Judge Huvelle, is hereby dismissed with prejudice, on the ground of absolute immunity.

### 2. Prosecutorial Immunity

As with Judge Huvelle, the plaintiff does not state the capacity in which he is suing AUSAs Walutes and Ingersoll. However, because the plaintiff is challenging actions taken by those federal prosecutors during his criminal prosecution, the defendants argue that Walutes and Ingersoll also are entitled to absolute immunity. Defs.' Mem. at 12–15. The Court agrees and therefore will not address the defendants' argument for dismissing the Complaint against the same defendants based on qualified immunity. *See id*. at 15–19.

Prosecutors enjoy absolute immunity from damages lawsuits predicated on their "initiating a prosecution and [ ] presenting the [government's] case[.]" *Imbler v. Pachtman*, 424 U.S. 409, 430–431 (1976) (holding that the prosecutor was absolutely immune from potential liability for allegedly knowingly using false testimony and suppressing material exculpatory evidence at trial); *see also Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995) (finding that "prosecutorial immunity [ ] protects [the prosecutor] from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury"). The plaintiff's speculative and conclusory allegations that AUSA Walutes "misled" Judge Huvelle and AUSA Ingersoll "took over the case and was fully aware that Dennis L. Roie was alive, but she did not bring that information to Judge Huevell's attention," Compl. ¶¶ 8–9, are based on their presentation of the government's case during the criminal proceedings. Therefore, the Complaint, as related to the federal prosecutors, is also dismissed with prejudice, on the ground of absolute immunity.[1]

## C. Supplemental Jurisdiction

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if," as in this case, it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Criminal defense attorneys, like defendant Johnson, are not government actors and

---

[1] To the extent that the plaintiff is suing the federal defendants in their official capacities for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, the defendants argue correctly that the plaintiff can state no claim for relief, *see* Defs.' Mem. at 12, because his guilty plea, which is the basis for his conviction and sentence, has not been "called into question by a federal court's issuance of a writ for habeas corpus" or otherwise declared invalid. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *see Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995) (reasoning that "[t]he FTCA like [42 U.S.C.] § 1983, creates liability for certain torts committed by government officials. As such, we conclude the same common law principles that informed the Supreme Court's decision in *Heck* should inform the decision of whether an action under the FTCA is cognizable when it calls into question the validity of a prior conviction."); *Hall v. Admin. Office of U.S. Courts*, 496 F. Supp. 2d 203, 208 (D.D.C. 2007) (applying *Heck* bar to claim for damages under the FTCA) (citing cases).

12

as such are not proper defendants in either § 1983 or *Bivens* actions. *See Rice v. D.C. Pub. Def. Serv.*, 531 F. Supp. 2d 202, 204 (D.D.C. 2008) ("Courts in this Circuit are bound by the Supreme Court's ruling, and [they] have dismissed civil rights claims against defense counsel on the ground that counsel are not state actors when representing clients.") (citing *Polk County v. Dodson*, 452 U.S. 312, 325 (1981) (other citations omitted)). The Court liberally construes the remaining allegations in the complaint as a common law claim of legal malpractice against Johnson, *see* Compl. ¶¶ 8–10, over which the Court declines to exercise supplemental jurisdiction. The claims against Johnson are therefore dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the federal defendants' motion to dismiss is granted, and the plaintiff's claims against Judge Huvelle and the federal prosecutors are dismissed with prejudice. The Court also declines *sua sponte* to exercise supplemental jurisdiction over the plaintiff's common law claims and therefore dismisses the plaintiff's claims against Johnson without prejudice.[2]

DATE: December 3, 2019

_____s/_____
Reggie B. Walton
United States District Judge

---

[2] A separate final order accompanies this Memorandum Opinion.